**THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| RIVIERA MARINE (INT.) PTY LIMITED | ) | Case No. 10-21722 (CED) |
| (receivers and managers appointed), *et al*,[1] | ) | |
| | ) | |
| Debtors in a Foreign Proceeding | ) | (Joint Administration Requested) |
| | ) | |

## <u>AMENDED PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF</u>

Stephen James Parbery, in his capacity as the foreign representative (the "<u>Foreign Representative</u>") of the above-captioned debtors in a foreign proceeding (collectively, the "<u>Chapter 15 Debtors</u>" or the "<u>Company</u>"), following a voluntary administration in Australia and subsequently effectuated Deed of Company Arrangement ("<u>DOCA</u>") resulting in a creditors' trust (together, the "<u>Australian Proceeding</u>") under part 5.3A of the Australian *Corporations Act 2001 (Cth)* (the "<u>Corporations Act</u>"), respectfully submits this petition (the "<u>Petition</u>") seeking entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting: (a) recognition by this Court of the Foreign Representative as the Chapter 15 Debtors' "foreign representative" as defined in section 101(24) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); (b)

---

[1] The Chapter 15 Debtors are: Riviera Marine (Int.) Pty Limited (receivers and managers appointed) (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); Riviera Coomera Pty Limited (receivers and managers appointed) (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); Riviera Marine (MFG) Pty Limited (receivers and managers appointed) (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); Riviera Runaway Bay Pty Limited (receivers and managers appointed) (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); and R Marine Pittwater Pty Limited (receivers and managers appointed) (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number). The location of the Chapter 15 Debtors' corporate headquarters and the service address for all of the Chapter 15 Debtors is: 50 Waterway Drive, Coomera, Queensland, Australia, 4209.

recognition of the Australian Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517, and 1520 of the Bankruptcy Code; and (c) recognition of the DOCA, as effectuated, and the Creditors' Trust Deed (as defined below) pursuant to section 1521.[2]

## Preliminary Statement

1.      The Chapter 15 Debtors are part of a group of Australian companies that are in the business of manufacturing and selling luxury boats.  As a consequence of the global credit crisis and economic slowdown in 2008, the Chapter 15 Debtors suffered substantial financial loss at a time when the Chapter 15 Debtors had, among other things, a large amount of secured debt that could not be serviced on their reduced revenue.

2.      All the assets of the Chapter 15 Debtors are pledged as security under: (a) the Chapter 15 Debtors' parent company's senior-secured credit facility with ANZ Fiduciary Services Pty Limited; (b) a trade finance facility with Australian and New Zealand Banking Group Limited; and (c) a floorplan finance facility with Capital Finance Australia Limited (collectively, the "Secured Lenders").   In May 2009, due to the Company's financial difficulties, the Secured Lenders appointed three individuals from Deloitte Touche Tohmatsu ("Deloitte") as joint and several receivers and managers of the Company, and shortly thereafter the Company's directors determined that the Company was either already insolvent or likely to become insolvent at some time in the future.  The Company then appointed three individuals, including the Foreign Representative, as the

---

[2]     In support of the Petition, the Foreign Representative has filed the *Declaration of Stephen James Parbery in Support of Petition for Recognition and Chapter 15 Relief* [Docket No. 4] (the "Parbery Declaration"), incorporated herein by reference.

Company's voluntary administrators pursuant to section 436A of the Corporations Act to investigate the Company's business, property, affairs, and financial circumstances, and to form an opinion as to whether it would be in the best interests of the Company's creditors to either: (a) execute a deed of company arrangement; (b) end the administration; or (c) wind up the Company.

3.      In January 2010, under the supervision of the administrators, the Company's creditors voted to enter into and execute a deed of company arrangement under section 439A of the Corporations Act, pursuant to which it would be possible for: (a) employees of the Chapter 15 Debtors to be paid in full; (b) the secured debt of the Chapter 15 Debtors to pass through unaffected; and (c) unsecured creditors of the Chapter 15 Debtors to be provided with a pro rata share of the assets of a Creditors' Trust (the "Creditors' Trust"), the declaration of and funding of which would be provided for in the DOCA, in full and complete satisfaction of the Company's unsecured obligations.

4.      The Company executed the DOCA in February 2010.  The Creditors' Trust was formally established by the execution of a Creditors' Trust Deed on June 25, 2010 (the "Creditors' Trust Deed"), and the Creditors' Trust was fully funded with $400,000[3] (less the DOCA administrators' fees) on or about that same day.  Pursuant to the DOCA, the funding of the Creditors' Trust officially released and discharged any liens, claims, and other obligations against the Company asserted by its pre-DOCA unsecured creditors.  On June 30, 2010, the Chapter 15 Debtors notified the Australian

---

[3]    Unless otherwise noted, all dollar amounts in the Petition are in Australian Dollars.

Securities and Investments Commission (the "ASIC") that the DOCA had been fully effectuated.

5.    Through these U.S. proceedings (the "Chapter 15 Cases"), the Chapter 15 Debtors seek to add certainty and closure to the DOCA process by ensuring that no party will have a U.S. forum in which to seek to enforce any liens, claims and other obligations against the Chapter 15 Debtors which have now been released and discharged by operation of the DOCA, or in which to collaterally attack the DOCA or the Creditors' Trust, both of which were effectuated in accordance with Australian Law, and both of which provided an opportunity for all of the Chapter 15 Debtors' U.S. creditors to participate.  This relief also will enable the Chapter 15 Debtors to expand their post-DOCA business operations into the U.S., without fear of attack by pre-DOCA creditors whose rights and claims were adjudicated through the Australian Proceeding.

6.    To this end, and as detailed herein, the Chapter 15 Debtors respectfully submit that they have satisfied each of the requirements for recognition under chapter 15 of the Bankruptcy Code.  Specifically:

- Stephen James Parbery qualifies as a "foreign representative" as defined in section 101(24), and, therefore, can petition this Court directly for recognition of the Australian Proceeding under section 1509.

- The Australian Proceeding is a "foreign proceeding" as defined in section 101(23).

4

- The Australian Proceeding is a "foreign main proceeding" as defined in section 1502(4), with Australia as the Chapter 15 Debtors' "center of main interests" ("COMI"), as such term is used in sections 1502(4), 1516(c), and 1517(b)(1).

7.    Thus, the relief sought in this Petition should be granted.

## Jurisdiction

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

9.    This case was properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Australian Proceeding under section 1515 of the Bankruptcy Code.

10.    Venue is proper pursuant to 28 U.S.C. §§ 1410(2) and 1410(3), as litigation involving Riviera Marine (Int.) Pty. Ltd. is currently pending in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida, and none of the Chapter 15 Debtors have assets located in the United States.

11.    The statutory bases for relief are sections 1504, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## Background

### I.    The Chapter 15 Debtors' Business and Operations

12.    The Chapter 15 Debtors are one of the largest luxury recreational boat manufacturers in Australia, and are a major participant in the global luxury recreational

marine industry. The principal activities of the Chapter 15 Debtors include the manufacture and wholesale of luxury boats which range from 33 to 70 feet in length.

13.     For the financial year ending June 30, 2008, the Chapter 15 Debtors sold 327 boats, with sales totaling (before factory incentives) approximately $265 million. For the financial year ending June 30, 2009, the Chapter 15 Debtors sold 139 boats, with sales totaling (before factory incentives) approximately $131 million. Finally, for the financial year ending June 30, 2010, the Chapter 15 Debtors sold 52 boats, with sales totaling (before factory incentives) approximately $54 million.

14.     Historically, approximately 60% of the Company's sales have been in Australia and Asia, 15% in Europe and the Middle East, and 25% in the U.S., Canada, and South America. Currently, given a substantial downturn in the European and American markets, approximately 85% of the Company's sales are in Australia and Asia, 9% are in Europe and the Middle East, and 6% are in the U.S., Canada, and South America. The Company's manufacturing facilities are located in Australia, and all of the Chapter 15 Debtors' approximately 292 employees are located in Australia.

15.     Other than as set forth in paragraph 16 below, the Chapter 15 Debtors have no assets or operations in the United States, as all assets and liabilities of Riviera Yachts of the Americas, Inc ("RYA"), a former U.S. subsidiary of the Parent Company, were assigned to Riviera Marine (Int.) Pty Limited on December 31, 2008. RYA was subsequently dissolved on February 20, 2009, by resolution of the Company's shareholders. Notification confirming dissolution of RYA from the Florida Department of State dated Feb. 23, 2009, is attached hereto as **Exhibit B.**

16.     Riviera Marine (Int) Pty Ltd. registered a 100% owned subsidiary in the United States in or around July 2009, Riviera Yachts USA, Inc. ("<u>RYUSA</u>"), to conduct warranty work on behalf of the Company.  RYUSA is not a party to the Australian Proceeding.

## II.     The Chapter 15 Debtors' Capital Structure

17.     Since 2002, as a result of a management buyout, the Chapter 15 Debtors' only shareholder is a corporate entity, A.C.N. 102 298 279 Pty Ltd (Receivers & Managers Appointed) (In Liquidation) (formerly Riviera Group Pty Ltd), registered in Australia as a private company limited by shares (the "<u>Parent Company</u>").  To fund the buyout, the Parent Company entered into a $75 million loan with ANZ Fiduciary Services Pty Limited whereby the assets of the Chapter 15 Debtors were pledged as security for the loan to ANZ Fiduciary Services, Pty Limited, and as security for the Secured Lenders (the "<u>Security Trustee</u>").  Further advances were made on this secured loan over the next approximately 6 years, and together with a trade finance facility and a floorplan finance facility dated as of July 2010, the Chapter 15 Debtors' debt owed to the Secured Lenders, together with accrued interest, is approximately $119.4 million.  In addition to the funding by the Secured Lenders, the Parent Company's majority shareholders loaned the Chapter 15 Debtors funds through unsecured notes.  Subsequent to the appointment of the receiver over the Parent Company, ANZ Banking Group Pty Ltd provided a $15 million working capital facility to the receivers (on behalf of the Parent Company).  The working capital facility is also secured by the securities pledged

to the Security Trustee. The Chapter 15 Debtors have no other secured debt in the capital structure.

**III.    Impact of the Global Economic Slowdown on the Chapter 15 Debtors**

18.    Concerns about the Chapter 15 Debtors' ability to remain solvent were raised in the Company's audited 2008 financial statements, which explained that the significant financial outcomes that arose from the global credit crisis and economic slowdown and the one off costs reflected in the 2008 results were:

(a)    a reduction in the expected recoverable value of inventory of $10.7 million;

(b)    non-recurring restructure and redundancy costs of $3.1 million; and

(c)    foreign exchange losses of $8.8 million.

As a result of these losses, the Chapter 15 Debtors had a working capital deficiency in 2008. Additionally, the Company's significant reduction in net assets in 2007 and 2008 led to a significant increase in the Company's borrowings from its shareholders and a debt restructuring exercise conducted with the secured lenders, which were needed to fund both the 2008 financial operational losses and an increase in inventory. The Chapter 15 Debtors were also unable to service the interest payments on their secured debt during this time. Though the Parent Company tried to work with the Secured Lenders to restructure the secured debt, those discussions proved unsuccessful.

19.    A number of business woes in 2008 also contributed to the Chapter 15 Debtors' financial decline. Though the Chapter 15 Debtors geared up their

K&E 16858556.15

manufacturing facility to produce 327 boats in the 2008 financial year, and invested a significant amount of money in capacity and new production development, the Company experienced a sharp decline in demand beginning in January 2008, and the Company's related production cuts in response to the decline in demand lagged six months behind. Also adding to these difficulties was the fact that a number of the Company's new models were either unsuccessful or late to market, and the Company underwent a management change in July 2008. The resulting significant downsizing in capacity, people, and stock at low and negative margins absorbed a large amount of the Company's cash reserves otherwise available.

## IV.  The Voluntary Administration and DOCA

20.    On May 8, 2009, it was noted at a general meeting of directors that the Parent Company had resolved at a board meeting held earlier that day ("Parent Board Meeting") that the Company should request the Secured Lenders to appoint a receiver over the assets of the Company on terms of the draft letter which had been circulated by their solicitors on May 7, 2009, and that the relevant officers and employees of the Company had been instructed by the Parent to immediately cease incurring financial indebtedness.

21.    On May 8, 2009, Christopher Campbell, Vaughan Strawbridge and Richard Hughes of Deloitte were appointed by the Secured Lenders as joint and several receivers (the "Receivers").

22.    On May 19, 2009, it was resolved at a general meeting of directors that the Company was insolvent or likely to become insolvent at some time in the future, and it

was noted that a consent to act as voluntary administrator had been given to Anthony Milton Sims, Stephen James Parbery (the Foreign Representative), and Grant Dene Sparks, of the firm PPB (the "<u>Administrators</u>"). It was also resolved that the Administrators be appointed voluntary administrators of the Company pursuant to section 436A of the Corporations Act. Attached hereto and marked as **<u>Exhibit C</u>** is a copy of the minutes of that meeting. A copy of ASIC Form 505 U—Notification of Appointment of Administrator Under S.436a, 436b, 436c, 436e(4), 449b, 449c(1), 449c(4) or 449(6) is attached hereto as **<u>Exhibit D</u>**.

23. Following their appointment, the Administrators investigated the Company's records for evidence of:

   (a)     unfair preference payments;

   (b)     uncommercial transactions;

   (c)     unfair loans;

   (d)     unreasonable director related transactions;

   (e)     voidable charges;

   (f)     related party transactions which may be voided where the company was insolvent at the time of the transaction; and

   (g)     insolvent trading.

Additionally, the Administrators identified and dealt with the Company's potential creditors worldwide.

24. Following these investigations, at a meeting of creditors on January 22, 2010 held in accordance with section 439A of the Corporations Act, and with the

K&E 16858556.15

exception of one creditor, the creditors unanimously resolved that the Chapter 15 Debtors execute a deed of company arrangement, with the Administrators also acting as the "Deed Administrators."

25. As required under section 444B of the Corporations Act after such a vote, the Chapter 15 Debtors executed a DOCA on February 12, 2010. The DOCA contained terms to the following effect:

(a) Employees and former employees of the Chapter 15 Debtors were to be paid 100% of their Employee Claims (as defined in the DOCA) by the Receivers and managers on or before April 30, 2010.

(b) On or before June 30, 2010, the Receivers and managers were to pay a contribution of $400,000 toward the Creditors' Trust for the unsecured creditors of the Chapter 15 Debtors. Under the terms of the Creditors' Trust Deed, the claims of unsecured creditors against the Chapter 15 Debtors, including those of U.S.-based unsecured creditors, were to be replaced with a right to receive a pro rata distribution from the Creditors' Trust with other unsecured creditors. If a DOCA had not been executed and the Chapter 15 Debtors had instead proceeded to liquidation under Part 5.6 of the Corporations Act, neither these funds nor any other funds would have been available to satisfy claims of unsecured creditors because the value of the debt owed to the

11

Secured Lenders is likely to have exceeded the value of the Chapter 15 Debtors' assets.

(c)     Upon execution of the Creditors' Trust Deed and creation of the unsecured creditors' rights to receive a distribution from the Creditors' Trust, all unsecured claims against the Company existing as of May 19, 2009 (the date of the appointment of the Administrators), including those of unsecured creditors located in the U.S., were to be extinguished and the DOCA was to terminate. Distributions from the Creditors' Trust will be paid as soon as practical after all claims are received and adjudicated.

The DOCA does not provide that the secured creditors be in any way prevented from realizing or otherwise dealing with their security and the Australian courts have entered no such order.[4]

26.     In order to make a claim under the DOCA, an unsecured creditor was required to lodge a proof of debt with the Deed Administrators. Pursuant to the Corporations Act and the Corporations Regulations 2001 (the "Corporations Regulations"), an Administrator must admit, reject, or require further evidence in support of a proof of debt within 28 days of receiving a written request from a creditor to do so, or such longer period allowed by ASIC. All creditors, including those located in the U.S., received notice of how to participate in the proof of debt process.

---

[4]     A copy of ASIC Form 505V – Notification of Appointment of Administrator of Deed of Company Arrangement Under section 444a(2), 449d(1) or 449d(2) of the Corporations Act is attached hereto as **Exhibit E**. A copy of ASIC Form 5047A – Deed of Company Arrangement Copy of Deed of Company Arrangement is attached hereto as **Exhibit F**.

27.     Following the termination of the DOCA, persons who would have been entitled to make a claim under the DOCA as creditors of the Chapter 15 Debtors but have not as yet done so continue to be able to lodge a claim with the trustee of the Creditors' Trust.   Pursuant to the Creditors' Trust Deed (which incorporates by reference the relevant provisions of the Corporations Act and the Australian Corporations Regulations) the Trustee must admit, reject, or require further evidence in support of a proof of debt within 28 days of receiving a written request from a creditor to do so.

## V.     Current Status of the Australian Proceeding and Commencement of the Chapter 15 Cases

28.     As mentioned above, on June 30, 2010, the Administrators notified the ASIC that the DOCA had been wholly effectuated.[5]   Accordingly:

(a)     each unsecured claim against the Chapter 15 Debtors was released, discharged and extinguished pursuant to clause 10.1 of the DOCA and pursuant to section 444D(1) of the Corporations Act;

(b)     each unsecured claim against a Chapter 15 Debtor was replaced with a right to participate in the distribution of the Creditors' Trust;

(c)     pursuant to clause 16.4 of the DOCA certain provisions of the DOCA continue to have effect notwithstanding that the DOCA has been effectuated including clause 10.1 (pursuant to which

---

[5]     A copy of ASIC Form 5056 dated June 30, 2010 is attached hereto as **Exhibit G**.

each unsecured claim against the Chapter 15 Debtors was released, discharged and extinguished); and

(d)     the trustee of the Creditors' Trust is required to proceed to distribute the Creditors' Trust to unsecured creditors in accordance with the terms of the Creditors' Trust Deed (which, as noted above, also allows for creditors who would have been entitled to make a claim under the DOCA as creditors of the Chapter 15 Debtors, but have not yet done so, to lodge a claim with the trustee of the Creditors' Trust).   Such creditors' entitlements to those distributions are currently being reviewed by the trustee of the Creditors' Trust and a distribution will be paid shortly to those creditors whose claims are accepted by the trustee.

29.     Therefore, to protect the Company from actions in the U.S., and to ensure recognition and enforcement in the U.S. of the DOCA and the Creditors' Trust Deed, the Foreign Representative has filed these Chapter 15 Cases seeking: (a) recognition of his status as the Chapter 15 Debtors' "foreign representative" as defined under section 101(24) of the Bankruptcy Code; (b) recognition of the Australian Proceeding as a "foreign main proceeding" under section 1517(b)(1); and (c) recognition of the DOCA and the Creditors' Trust Deed under section 1521.

30.     Congress enacted chapter 15 to ensure that a U.S. bankruptcy court can recognize and enforce actions and orders of a foreign court in a restructuring proceeding

K&E 16858556.15

undertaken in a jurisdiction where the debtor has its COMI or an "establishment." Chapter 15 provides for both the granting of provisional relief during the pendency of the foreign proceeding, such as application of section 362 to U.S. assets, and recognition and enforcement in the U.S. of any orders entered in the foreign proceeding. Here, the Chapter 15 Debtors' assets are in Australia, along with all of their operations and employees, thereby establishing Australia as their COMI, and the basis for the Australian Proceeding to be recognized by the Court as a foreign main proceeding.

## Relief Requested

31.     By this Petition, the Foreign Representative respectfully requests that the Court enter an order: (a) granting recognition by this Court of the Foreign Representative as the Chapter 15 Debtors' "foreign representative" as defined in section 101(24) of the Bankruptcy Code; (b) granting recognition of the Australian Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517, and 1520 of the Bankruptcy Code; and (c) recognizing and enforcing the terms and effect of the DOCA as effectuated (including the release, discharge, and extinguishment of all unsecured claims against the Chapter 15 Debtors) and the Creditors' Trust Deed pursuant to section 1521.[6]

## Basis for Relief

32.     Congress designed chapter 15 to protect assets and other interests in the U.S. for parties having commenced restructuring proceedings in a foreign jurisdiction. Relief under chapter 15 prevents dismemberment of U.S. or non-U.S. businesses through

---

[6]     The Chapter 15 Debtors reserve the right to request further relief pursuant to section 1521 of the Bankruptcy Code prior to the hearing on the Petition.

actions commenced in the U.S. and avoids disruptions that otherwise could derail a party's foreign restructuring.

33.     Consistent with these principles, the Foreign Representative commenced the Chapter 15 Cases to obtain full recognition and enforcement of the Australian Proceeding in the U.S.  The Foreign Representative anticipates the U.S. proceedings will complement the Chapter 15 Debtors' primary proceeding in Australia and ensure the effective and efficient administration of the Chapter 15 Debtors' restructuring.  Recognition of the terms and effect of the DOCA and the Creditors' Trust Deed will also serve to release, discharge, and extinguish claims in the U.S. against the Chapter 15 Debtors, and thereby enable the Chapter 15 Debtors to proceed with their long-term business plan and global expansion.  The Foreign Representative submits that recognition of the Australian Proceeding will allow the Chapter 15 Debtors to restructure without prejudicing the rights of U.S. creditors, as all affected U.S. creditors had adequate notice of the Australian Proceeding to the extent required under the Corporations Act with regard to making a claim under the DOCA, and have the same opportunity as all creditors of the Chapter 15 Debtors to lodge claims and receive a pro rata distribution of the Creditors' Trust pursuant to the Creditors' Trust Deed.

I.      **The Australian Proceeding Is a Foreign Proceeding**

34.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to

control or supervision by a foreign court, for the purpose of
reorganization or liquidation.

11 U.S.C. § 101(23).

35.     Although Congress just enacted chapter 15 in 2005, and courts have not
yet fully developed precedent on it, at least one court has opined on the factors necessary
to demonstrate that a proceeding constitutes a "foreign proceeding."   In *In re Betcorp
Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009), the court examined chapter 15's
legislative history as well as the *Model Law on Cross-Border Insolvency*, which
ultimately formed the basis for chapter 15, and disaggregated section 101(23) into a
seven-factor test to determine whether a proceeding—in particular, a proceeding under
the Corporations Act—constitutes a "foreign proceeding."   Specifically, the court found
that a "foreign proceeding" must be a proceeding:

(i)     in which "acts and formalities [are] set down in law so that
courts, merchants and creditors can know them in advance,
and apply them evenly in practice;"

(ii)    that has either a judicial or an administrative character;

(iii)   collective in nature, in that it considers the rights and
obligations of all creditors;

(iv)    located in a foreign country;

(v)     authorized or conducted under a law related to insolvency
or the adjustment of debt, even if the debtor that has
commenced such proceedings is not actually insolvent;

(vi)    in which the debtor's assets and affairs are subject to the
control or supervision of a foreign court or other authority
competent to control or supervise a foreign proceeding; and

(vii)   for the purpose of reorganization or liquidation.

17

*See Betcorp*, 400 B.R. at 275-82; *see also In re Overnight and Control Commission of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

36.     As further supported by the facts discussed in the Parbery Declaration, the Australian Proceeding, commenced to restructure the Chapter 15 Debtors' financial obligations, constitutes a "foreign proceeding" under the *Betcorp* test.

37.     *First*, the Chapter 15 Debtors commenced the Australian Proceeding pursuant to part 5.3A of the Corporations Act.   As the statutory and procedural requirements for the Australian Proceeding are each "set down in law" under the Corporations Act, the Australian Proceeding satisfies this prong of the *Betcorp* test.   *See Betcorp,* 400 B.R. at 278 (determining that an Australian liquidation proceeding under the Corporations Act satisfies this prong of the test as to whether a proceeding is a "foreign proceeding").

38.     *Second*, in the Australian Proceeding, the assets and affairs of the Chapter 15 Debtors are subject to the control and supervision by a foreign court.   Under the Corporations Act the Australian courts can, and if necessary, will, perform numerous supervisory roles in the Australian Proceeding.  For example:

> (a)     on the application of a creditor, the Court may make such order as it thinks necessary to protect the creditor's interest while the company is under administration (Corporations Act, § 447B(2));
>
> (b)     the administrator of a company under administration or an administrator under a deed of company arrangement may apply to the Australian Court for directions about a matter arising in

18

K&E 16858556.15

connection with the performance or exercise of any of the administrator's functions and powers (Corporations Act, § 447D);

(c)     on the application of a creditor, a member (shareholder) or the ASIC, the Court may make any order as it thinks just if it is satisfied that the administrator of a company under administration or an administrator of a deed of company arrangement has either (A) managed, or is managing, the company's business, property or affairs in a way that is prejudicial to the interests of some or all of the company's creditors or members; or (B) done an act, or made an omission, or proposes to do an act, or to make an omission, that is or would be prejudicial to such interests (Corporations Act, § 447E);

(d)     on the application of the ASIC or a creditor (among others) the Australian Court may remove from office the administrator of a company under administration or of a deed of company arrangement and appoint someone else as administrator of the company or deed (Corporations Act, § 449B);

(e)     upon the application of a creditor, the ASIC, the company, or any other interested person, the Australian Court can order that a deed of company arrangement be terminated on various

19

grounds, including, for example (A) that false or misleading information was provided to creditors prior to them voting for the DOCA; (B) that effect cannot be given to the DOCA without injustice or undue delay (C) that the DOCA or a provision of it is oppressive, unfairly prejudicial or unfairly discriminatory against one or more creditors (D) that the DOCA or a provision of it is contrary to the interests of the creditors of the company as a whole (Corporations Act, § 445D);

(f)     any person aggrieved by any act, omission, or decision of the administrator of a company under administration or a deed administration may appeal to the Australian courts, which can confirm, reverse, or modify any act or decision, or remedy the omission (Corporations Act, § 1321);

(g)     on the application of a creditor, ASIC or any other interested person (among others), the Australian courts may make any such order as it thinks appropriate about how the relevant sections of Part 5.3A of the Corporations Act are to operate in relation to a particular company (Corporations Act, § 447A); and

(h)     after the unsecured creditors become beneficiaries under the Creditors' Trust, the actions of the trustee of the Creditors' Trust are subject to the supervision of the Australian courts. For

example, any person who claims that the person's rights as beneficiary will be prejudiced by a proposed distribution of the Creditors' Trust may apply to the Court for such order or directions as the circumstances may require, and during such time and while the application is pending, the trustee must abstain from making the conveyance or distribution (Trustee Act 1925 (New South Wales), § 63(10)). In addition, it is a well-settled principle of Australian law that the Australian courts have power to make any declaratory order or judgment that may be needed to secure the proper management and administration of the trust property and the protection of the beneficiaries of a trust (*see* Supreme Court Act (New South Wales) 1970, § 75).

39. The submission of proofs of debt and the ultimate payments to creditors are also dictated by the administrative framework created by the Corporations Act, the DOCA, and the Creditors' Trust Deed. If no party objects, it is possible that the entire proceeding may progress from commencement to final disbursal of funds without any judicial involvement. However, in order to protect creditors' rights—including rights of the Chapter 15 Debtors' creditors located in the U.S.—the proceeding may change from administrative to judicial in character upon any of the circumstances set forth in paragraph 38 above. Other courts have found that such a level of judicial oversight is sufficient for purposes of whether a foreign proceeding satisfies the judicial oversight

requirement of chapter 15. *See Betcorp*, 400 B.R. at 281 (in determining that an out-of-court Australian liquidation under the Corporations Act had sufficient judicial oversight to satisfy the requirements of chapter 15, stating that "section 101(23) of the Bankruptcy Code requires only that a proceeding have either an administrative *or* a judicial character." (emphasis in original)). Accordingly, the Australian Proceeding meets this requirement under section 101(23) of the Bankruptcy Code.

40.     ***Third***, the Australian Proceeding is collective in nature, in that it considers the rights of all creditors. Indeed, all creditor classes in the Australian Proceeding either are unimpaired or are impaired and entitled to participate in the proceedings. In *Betcorp*, for example, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors," and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *See Betcorp*, 400 B.R. at 281. Here, the DOCA considers the rights and obligations of all creditors. The DOCA provides for the payment of employee claims in full by the receivers and managers, and provides, through the declaration of the Creditors' Trust, for the pro rata distribution of a fund (contributed to by the receivers and managers) amongst unsecured creditors whilst preserving the rights of secured creditors to realize or otherwise deal with their security.

41.     ***Fourth***, the Australian Proceeding took place entirely in Australia. In addition, the Chapter 15 Debtors are located in Australia, and any judicial involvement in the Australian Proceeding would be by the Australian courts.

42.     ***Fifth***, the Corporations Act is an Australian law governing, among other things, insolvency and the adjustment of debts.  As the *Betcorp* court concluded, the Corporations Act "contains provisions that deal with corporate insolvency and allow for the adjustment of debts."  *Betcorp*, 400 B.R. at 282.  Although the Chapter 15 Debtors may not have been insolvent prior to the appointment of the Administrators, the Chapter 15 Debtors would have become insolvent if not for the appointment of the Administrators and the commencement of the Australian Proceeding.  The goal of the Australian Proceeding was, therefore, to enable the Chapter 15 Debtors to avoid an insolvent liquidation process by adjusting their debts pursuant to Australian law, which falls squarely within chapter 15's framework.

43.     ***Sixth***, a competent authority supervised the Chapter 15 Debtors' assets and affairs during the pendency of the Australian Proceeding.  During the Australian Proceeding, control of the Chapter 15 Debtors' assets and affairs was divided amongst the Receivers, Administrators, and Deed Administrators.  Each of those individuals was ultimately regulated by the ASIC, as section 5B of the Corporations Act states that the "ASIC has the general administration of this Act."

44.     Specifically, pursuant to section 449B of the Corporations Act, the ASIC may remove or revoke the authority of an administrator or deed administrator on application to the Court, and pursuant to section 423 of the Corporations Act, the Court may take any such action as it deems fit if (on the application of any person) it appears that a receiver has not faithfully performed, or is not faithfully performing, the receivers' functions.  Therefore, a reasonable interpretation of the relationship between the ASIC

and an administrator or a deed administrator or the ASIC and a receiver is that the ASIC itself is "an authority competent to control and supervise a foreign proceeding" within the meaning of sections 101(23) and 1502 of the Bankruptcy Code. *See Betcorp*, 400 B.R. at 283-64 (Australian winding up proceedings under the Corporations Act held to be supervised by Australian court because ASIC controls and supervises liquidators that control a debtor's assets during the wind-up); *In re Tradex Swiss AG*, 385 B.R. 34, 42 (Bankr. D. Mass. 2008) (Swiss Federal Banking Commission held to be a foreign court under chapter 15 because it controls and supervises liquidations of entities, such as the debtor, that are in brokerage trade).

45.     Alternatively, the Australian Proceedings are also subject to direct supervision by the Australian courts.  As discussed in paragraph 37 above, parties who have an interest can apply for judicial oversight of the administrator of a company or of a deed of company arrangement or for judicial oversight of the trustee of the Creditors' Trust in numerous circumstances, which will result in direct judicial involvement in the proceeding.  Accordingly, under either alternative, a competent authority supervises the Australian Proceedings, and this requirement of section 101(23) of the Bankruptcy Code is satisfied.

46.     ***Finally***, one of the primary objectives of the Australian Proceeding is the restructuring of the Chapter 15 Debtors.  Section 435A of the Corporations Act provides that the object of the provisions relating to administration and deeds of company arrangement is "to provide for the business, property and affairs of an insolvent company to be administered in a way that: (a) maximizes the chances of the company, or as much

24

as possible of its business, continuing in existence; or (b) if it is not possible for the company or its business to continue in existence, results in a better return for the company's creditors and members than would result from an immediate winding up of the company." In an Australian proceeding, a deed of company arrangement facilitates a company's recovery to a position of solvency and allows that company to continue its corporate existence. The DOCA records the terms of a restructuring of a company and the pre-administration unsecured debts are extinguished in whole after the obligations of the DOCA are met and the DOCA is effectuated. The successful completion of the terms of the DOCA operates as a bar to all claims against the company that arose prior to the appointment of an administrator. The Foreign Representative therefore respectfully submits that the Chapter 15 Debtors commenced the Australian Proceeding for a reorganization purpose, as required by section 101(23). *Cf. In re Avánzit*, 385 B.R. at 533-34 (recognizing a "financial restructuring" as a "reorganization" for purposes of the sections 101(23) and 1517 analysis, especially where the reorganization document at issue provides for repayment of debts).

47. Accordingly, this Court should find that the Australian Proceeding satisfies section 101(23) and constitutes a "foreign proceeding" as required by section 1517.

K&E 16858556.15

## II.     The Foreign Representative Qualifies as a Foreign Representative

48.     In addition to qualifying as a foreign proceeding as defined in the Bankruptcy Code, to obtain recognition under chapter 15, the Australian Proceeding must have a "foreign representative." *See* 11 U.S.C. § 1517.

49.     The Foreign Representative submits that he commenced the Chapter 15 Cases as a duly appointed and authorized "foreign representative" of the Chapter 15 Debtors within the meaning of section 101(24).  Section 101(24) provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

50.     As discussed in paragraph 21 above, on May 19, 2009, it was resolved at a general meeting of directors of the Chapter 15 Debtors that the Chapter 15 Debtors were insolvent or were likely to become insolvent some time in the future.  At that meeting, it was noted that a consent to act as voluntary administrator had been given of the Administrators (including the Foreign Representative) and resolved that the Administrators be appointed voluntary administrators of the Company pursuant to section 436A of the Corporations Act.  Further, pursuant to clause 2.2 of the DOCA, the Foreign Representative was appointed as one of the administrators of the DOCA.

51.     Pursuant to Part 5.3A of the Corporations Act and the authority given to the Foreign Representative under the DOCA, which was executed by the Chapter 15 Debtors in accordance with the requirements of the Corporations Act, the Foreign

Representative was at all relevant times (including at the time the DOCA was effectuated and the release and extinguishment of unsecured claims took effect) authorized to administer the reorganization of the Chapter 15 Debtors' affairs in accordance with the DOCA, including by distributing the funds received from the receivers to the trustee of the Creditors' Trust. Further, the Foreign Representative was empowered and required by the DOCA to distribute funds received from the receivers and managers in accordance with the DOCA, namely by executing the Creditors' Trust Deed and transferring the Creditors' Trust to the trustee of the Creditors' Trust for distribution to unsecured creditors in accordance with the Creditors' Trust Deed. Finally, on September 7, 2010, the Receivers signed letters of authorization, attached hereto as **Exhibit H**, authorizing the Foreign Representative to act as the foreign representative for each of the Chapter 15 Debtors and to commence the Chapter 15 Cases. On this basis, the Foreign Representative submits that he has met the requirements of section 101(24).

III.    **The Australian Proceeding is a Foreign Main Proceeding for the Australian Chapter 15 Debtors**

52.    The Australian Proceeding constitutes a "foreign main proceeding" for the Chapter 15 Debtors as defined in section 1517(b)(1) because Australia is the Chapter 15 Debtors' center of main interests ("COMI").

53.    Section 1517(b)(1) provides that a "foreign main proceeding" is a "foreign proceeding" pending in the country where the debtor has its center of main interests, or COMI. 11 U.S.C. § 1517(b)(1).

54.    Section 1516(c) provides that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main

27

interests." 11 U.S.C. § 1516(c); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd* 389 B.R. 325 (S.D.N.Y. 2008). Though this is a rebuttable presumption, the Chapter 15 Debtors' registered office is in Australia, and each of the alternative factors used by U.S. courts to make a COMI determination also lead to the conclusion that Australia is the Chapter 15 Debtors' COMI. These factors include: (a) the location of the debtor's headquarters; (b) the location of those persons or entities managing the debtor (which, in certain instances, could be the holding company headquarters); (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors affected by the case; and (e) the jurisdiction whose law would apply to most disputes. *Bear Stearns*, 389 B.R. at 336 (citing *SPhinX*, 351 B.R. at 116-17; *In re Tradex Swiss AG*, 384 B.R. 34, 43 (Bankr. D. Mass. 2008)); *Betcorp*, 400 B.R. at 287-88 (discussing *Bear Stearns*, *Tradex* and certain European insolvency law cases for COMI analysis). "The flexibility inherent in chapter 15 strongly suggests, however, that [a] court should not apply such factors mechanically," but with an eye toward "chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *SPhinX*, 351 B.R. at 117.

55. An analysis of these factors demonstrates that Australia constitutes the Australian Chapter 15 Debtors' COMI, as each factor points to Australia as the Chapter 15 Debtors' COMI.

56. <u>The Location of the Chapter 15 Debtors' Headquarters</u>. The Chapter 15 Debtors all are corporations organized and existing under the laws of Australia, and have

28

no corporate presence other than the Company's Coomera, Queensland headquarters (which serves as the headquarters for each of the Chapter 15 Debtors).

57.     <u>The Location of Those Persons or Entities Managing the Chapter 15 Debtors</u>.    Each of the Chapter 15 Debtors' officers, directors, and employees are permanently located in and work in Australia.  Further, strategic planning for the Chapter 15 Debtors takes place at the Company's Coomera, Queensland headquarters and all budgets and business plans ultimately get approved by managers operating in Coomera, Queensland.  In addition, pricing, sales programs, and procurement for the Chapter 15 Debtors are ultimately approved by the Company's headquarters in Coomera, Queensland.

58.     <u>The Location of the Chapter 15 Debtors' Primary Assets</u>.  The Chapter 15 Debtors are each Australian corporations, with substantially all of their assets located in Australia.  In particular, the Company's employees and manufacturing facility is located in Australia.

59.     <u>The Location of the Majority of the Chapter 15 Debtors' Creditors Affected By the Australian Proceeding</u>.  The majority of the Chapter 15 Debtors' creditors affected by the Australian Proceeding are located in Australia.  If fact, more than 85 percent in number and 90 percent in dollar amount of the Chapter 15 Debtors' unsecured creditors are located in Australia.

60.     <u>The Jurisdiction Whose Law Would Apply To Most Disputes</u>.  As the Chapter 15 Debtors are Australian corporations conducting the majority of their business in Australia, Australian law would apply to most disputes involving the Chapter 15

K&E 16858556.15

Debtors. In particular, the principal financing agreements relating to the Chapter 15 Debtors (including a loan agreement originally dated October 4, 2002, and a working capital facility agreement originally dated October 4, 2002) are each governed by the laws of New South Wales, Australia. Further, most agreements with the Company's dealers around the world are governed by the laws of Queensland, Australia.

61.     <u>Other Factors Demonstrating Australia is the Center of Main Interest of the Chapter 15 Debtors</u>. Several other factors demonstrate that Australia is the Chapter 15 Debtors' center of main interest. First, substantially all of the books and records of the Chapter 15 Debtors are maintained in Coomera, Queensland. Second, all of the officers and directors who were appointed to the Chapter 15 Debtors immediately prior to the administration are located in Australia, and all board meetings were held in Australia. Third, the Company's sales teams located outside of Australia are required to coordinate with dealer relationship managers and other relevant staff located in Australia to order products, confirm pricing, and deal with certain other corporate matters. Fourth, all key activities associated by the Chapter 15 Debtors either occurs in Australia, or requires approval from employees located in Australia before proceeding.

62.     The Foreign Representative respectfully submits that this Court should find that the COMI lies in Australia for each of the Chapter 15 Debtors, and the Court should recognize the Australian Proceeding as a "foreign main proceeding" under section 1517(b).

K&E 16858556.15

## IV.    The Court Should Recognize and Enforce the DOCA

63.    Enforcement and recognition of the DOCA aligns with the purposes of chapter 15 and the Australian Proceeding, and the Court should give the DOCA and all related documents from the Australian Proceeding—including the Creditors' Trust Deed—full force and effect.    As set forth in the preamble to the *Model Law on Cross-Border Insolvency*, the Model Law seeks to promote:

> (a) cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor; (d) protection and maximization of the value of the debtor's assets; and (e) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

*See Model Law on Cross-Border Insolvency*, available at www.uncitral.org.

64.    Section 1512(a) of the Bankruptcy Code permits the Court to, "where necessary to effectuate the purpose of [chapter 15] . . . at the request of the foreign representative, grant any appropriate relief."  11 U.S.C. § 1521(a).  Section 1521 also sets forth various forms of relief that may be granted upon recognition of a foreign proceeding, including "entrust[ing] the distribution of all or part of the debtor's assets in the U.S. to the foreign representative."  11 U.S.C. § 1521(b).  Further, sections 1525 and 1527, when read in conjunction, direct this Court to cooperate "to the maximum extent possible" with the Australian Court regarding "the coordination of the administration and supervision" of the Chapter 15 Debtors' assets and affairs.  11 U.S.C. §§ 1525, 1527(3).

31

65. Courts have routinely enforced foreign orders in chapter 15 cases where such courts also granted recognition of a foreign proceeding. *See*, *e.g.*, *In re Chemokine Therapeutics Corp.*, Case No. 09-11189 (PJW) (Bankr. D. Del. April 28, 2009) [Docket No. 15] (recognizing and giving full force and effect to two Australian orders approving the sale of certain assets); *In re Abitibi-Consolidated, Inc.*, Case No. 09-11348 (KJC) (Bankr. D. Del. April 21, 2009) [Docket No. 18] (giving full force and effect to Australian court order approving debtors' securitization plan); *In re Destinator Technologies, Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) [Docket No. 63] (granting enforcement of Australian order approving sale of two of debtors' subsidiaries); *In re Hollinger, Inc.*, Case No. 07-11029 (PJW) (Bankr. D. Del. May 30, 2008) [Docket No. 89] (granting full force and effect to Australian order and authorizing Foreign Representative to take any steps necessary to implement its terms).

66. Here, recognition and enforcement of the DOCA certainly serves the purposes of chapter 15 and the Australian Proceeding. The DOCA effectuates the relief sought under the Corporations Act and complies with all statutory requirements thereunder. With this relief, and with recognition of the DOCA and its associated relief in the U.S., comes the opportunity for the Chapter 15 Debtors to have a fresh start in their global operations, and specifically with expansion in U.S. markets. Indeed, success of the Chapter 15 Debtors' U.S. operations going forward will be significantly impacted by the discharge of the Chapter 15 Debtors' unsecured debtors, including U.S.-based unsecured debts, which recognition and enforcement of the DOCA will provide.

K&E 16858556.15

67.     The Chapter 15 Debtors' reorganization relies on a detailed set of steps and transactions, not least of which being the release and discharge of unsecured claims against the Chapter 15 Debtors.  Without deference to the Australian Proceeding, and enforcement of the DOCA in the U.S., the Chapter 15 Debtors cannot obtain certainty on their ability to ship goods to the U.S. and conduct business with dealers in the U.S., and hence cannot fully effectuate the restructuring contemplated by the Corporations Act.

68.     In short, the Australian reorganization would be significantly harmed without U.S. Court assistance, and the Foreign Representative respectfully submits that under the circumstances the Chapter 15 Debtors represent the proverbial "poster children" for the relief requested herein.

## VI.     Compliance with Bankruptcy Rule 2002(q)(1)

69.     Bankruptcy Rule 2002(q)(1) prescribes 21 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition.  Fed. R. Bankr. P. 2002(q)(1).  Bankruptcy Rule 9007 permits this Court to shorten the time, form, and manner in which notice shall be given.  Fed. R. Bankr. P. 9007.

70.     The Foreign Representative requests that the recognition hearing be scheduled for October 7, 2010, or as soon thereafter as this Court may be available.  This will provide the appropriate parties-in-interest with the required 21 days notice (plus any additional days for mailing).  Notice of the hearing on the Petition will be provided to those parties required to receive notice pursuant to Rule 2002(q) or their counsel and to other interested parties in accordance with the procedures established by the Court.  The

Foreign Representative proposes to notify parties by electronic mail, overnight delivery, or otherwise by U.S. mail.

71.     The above-described notice meets the requirements of Rule 2002(q) because it is provided to the required parties within the proscribed time period, and it is also in keeping with this Court's "discretion to set the particularities of notice procedures" pursuant to Rule 9007. *See In re Pierce*, 435 F.3d 891, 892 (8th Cir. 2006).

## Conclusion

72.     The Foreign Representative respectfully submits that the Petition satisfies the requirements for recognition of the Australian Proceeding as a "foreign main proceeding" and of Stephen James Parbery as the Chapter 15 Debtors' "foreign representative." Further, the Court should recognize the DOCA, as effectuated, and the Creditors' Trust Deed.

## Notice

73.     The Foreign Representative has provided notice of the Petition, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee; and (b) all parties to litigation currently pending in the United States in which the Chapter 15 Debtors are a party. In light of the relief requested, the Foreign Representative submits that no further notice is necessary.

## No Prior Request

74.     No prior request for the relief south in this Petition has been made to this or any other Court.

WHEREFORE, the Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 9, 2010
Tampa, Florida

**NELSON-HESSE, LLP**
F. Steven Herb
Daniel C. Guarnieri
2070 Ringling Blvd.
Sarasota, Florida 34237
Telephone: (941) 366-7550
Facsimile: (941) 955-3708
Email:       sherb@nelsonhesse.com
Email:       dguarnieri@nelsonhesse.com

- and -

**KIRKLAND & ELLIS LLP**
David R. Seligman, P.C. (*pro hac vice* pending)
Scott B. Kitei (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:       david.seligman@kirkland.com
            scott.kitei@kirkland.com

Counsel to the Foreign Representative